UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER DEWAYNE HOGAN,

    Plaintiff,

v.                                 CAUSE NO.: 3:19-CV-288-RLM-MGG

BRUCE LEMMON, et al.,

    Defendants.

OPINION AND ORDER

Christopher Dewayne Hogan, a prisoner without a lawyer, filed a complaint against eight[1] separate defendants alleging that he has received inadequate medical care for his stomach, hip, and shoulder pain while housed at the Indiana State Prison. The court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent

---

[1] While the caption of Mr. Hogan's complaint lists only five defendants, he has listed additional defendants in the body of his complaint. (ECF 1 at 1, 2-9.)

standards than formal pleadings drafted by lawyers . . ." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Mr. Hogan has resided at ISP since 2002. Throughout his stay at ISP, he has slept on a thin mattress that wears out quickly but isn't frequently replaced, providing inadequate support for his hips, back, and shoulders. He has had pain in his hips and shoulders that makes sleep difficult since 2014. Mr. Hogan also says that his diet contains excessive gluten and soy, and that, beginning in 2014, he has suffered from gastrointestinal distress after meals due to his poor diet. He has sued Commissioner Bruce Lemmon, Acting Commissioner Robert E. Carter, Jr., Warden Ronald Neal, Healthcare Administrator Sherri Fritter, Dr. Thompson, Dr. Martha Kis, Grievance Specialist J. Wallen, and Assistant Warden Payne. He has also included several "John Doe" defendants.

Mr. Hogan indicates that he complained about his stomach, hip and shoulder pain in 2014, but got no response. On April 27, 2015, he filed a UCC-1 Financing Statement in Wisconsin. According to Mr. Hogan, he filed the statement "to put the world on notice of his rights, titles, and interest, as a superior lien interest with re: to the collateral described within that form, as well as the collateral described within the Security Agreement." (ECF 1 at 14.)

In October 2015, Mr. Hogan sent a notice directing that the diet plan be changed to Commissioner Lemmon and Warden Neal. Mr. Hogan believes that because Commissioner Lemmon and Warden Neal didn't respond to the demands contained in the notice, they stipulated to his demands, but still didn't fulfill his demands. A caseworker told him he needed to address his issues to the

2

medical department. Instead, on October 29, 2015, Mr. Hogan filed a "fixture filing" in Marion County. (ECF 1 at 15.) Mr. Hogan believes this filing secures his "rights, titles, and interest as a Superior Lien Interest with re: to a fixture filing under UCC § 9-102(a)(40)." (*Id.*)

On July 4, 2015, Mr. Hogan filed a request for healthcare, seeking care for his stomach, shoulder, and hip pain. He also indicated that he needed a special mattress and a "diet free of gluten and soy and rich with protein, fresh fruits and vegetables." (*Id.* at 16.) He saw a heath care provider (he doesn't say who) for his stomach pain, and he was prescribed medication. The medication didn't help. It's not clear why his hip and shoulder pain weren't addressed when Mr. Hogan was seen by a provider following his request for care, but he indicates that no medical provider saw him for his complaints of shoulder and hip pain. He was provided with aspirin.

In October 2016, Mr. Hogan filed an informal grievance about the lack of treatment for his hip and shoulder pain. Dawn Nelson responded by indicating that the records didn't show that he sought to be seen by medical for serious injuries to his shoulder, but that he could submit a health care request. Rather than following through by submitting a health care request as directed, Mr. Hogan served a document titled as a "Notice of Fault and Opportunity to Cure and Contest Presetment" on Commissioner Lemmon, Warden Neal, and former Indiana Attorney General Gregory Zoeller. (*Id.* at 18.) According to Mr. Hogan, this document made Bruce Lemmon, Ronald Neal, and Attorney General Zoeller aware that "Secured Party Christopher Hogan" had previously sent "documents

3

asserting titles, rights, remedies, and defenses" and requesting information and services, that they knew or should have been aware of the presentments, and that they were in default and had dishonored the presentments. (*Id.* at 18-19.)

Mr. Hogan asserts that, on January 3, 2017, Corizon Health Care tried to confer an unspecified benefit[2] on him that would, in turn, "obligate him to satisfy a commitment to administrative segregation." (*Id.* at 22.) Mr. Hogan refused the benefit because he didn't want to be obligated to Corizon. He was taken to restrictive housing. Mr. Hogan served an additional document on Commissioner Lemmon, Warden Neal, and Corizon on February 2, 2017. Mr. Hogan describes this document as a "Complaint, Affidavit, Constructive Legal Notice, and Response to State form 9262 (RS/4-01)(item #CACR1982CDH00210), re: all rights to obtain, use, request, refuse, or authorize the administration of any food, beverage, nourishment, water, substance to be infused, drug manipulation, material process, procedure, surgery, psychiatric treatment that might benefit the present or future state of the body, mind, or spirit per Security Agreement item #5A1982COH000001, Financing Statement File NO. U201500001511, and Legal Notice and Demand item No. LNO1982COH000047 under Necessity and Lawful Protest." (*Id.* at 20-21.)

Mr. Hogan filed a grievance against Corizon based on the January 3, 2017, incident. The next day, an unidentified health care provider offered Mr. Hogan aspirin. Sherri Fritter responded to the grievance, but she didn't address the

---

[2] Although it's not entirely clear from the complaint, it appears that Mr. Hogan was offered medical care, which he refused because he deemed it to be inadequate. (*Id.* at 21-23.)

4

claims in the grievance to his satisfaction – Mr. Hogan says she relied upon fraudulent statements.

On January 20, 2017, Mr. Hogan served Attorney General Gregory Zoeller with an "Affidavit of Notice of Default." (*Id.* at 24.) Mr. Hogan believes that each of the defendants should have been made aware of this notice. On January 23, Mr. Hogan filed a formal grievance because he was unhappy with the manner in which his informal grievance had been resolved. In his formal grievance, Mr. Hogan sought to have an allegedly fraudulent state form removed from his health record. He also sought care for his stomach, hip, and shoulder pain, and he asked to be removed from restrictive housing for health reasons. His grievance was denied by Vicki Long.

On February 2, Mr. Hogan mailed notice to Corizon and its medical personnel that Corizon was liable for the ill effects of his inadequate health care, and that his refusal of inadequate health care doesn't amount to an assumption of responsibility. He set forth a variety of demands for quality medical care, an improved diet, and monetary damages. Mr. Hogan also opined that the defendants' "silence equates to tacit agreement." (*Id.* at 29.)

In April of 2017, Mr. Hogan mailed Corizon, Commissioner Lemmon, and others a document he titled as a "Notice of Fault and Opportunity to Cure and Contest re: Complaint, Affidavit, Constructive Legal Notice, and response to state form 9262 (R3/4-01) item No. CACR1982CDH00210." (*Id.* at 30.) He received no response. On August 2, he sent another "affidavit or Notice of Default" to Commissioner Lemmon, Robert Carter, and Corizon. The defendants again didn't

5

respond. Mr. Hogan believes that, by not responding, the defendants stipulated to his version of the facts.

On December 3, 2018, Mr. Hogan submitted two healthcare requests. One sought care for his stomach pain, and the other sought care for his hip and shoulder pain. He received no response.

On February 20, 2019, Mr. Hogan filed an informal grievance against Warden Payne about the outdated mattress causing shoulder and hip pain. Mr. Hogan didn't get a response. He filed a formal grievance on March 3, 2019. Grievance Specialist J. Wallen returned the form to Mr. Hogan and indicated that he needed to use the proper chain of command by speaking to his unit team lieutenant first. Mr. Hogan says that he had already done that. His unit team lieutenant told him that he could fill out a healthcare slip, but no mattresses were available. Mr. Hogan filed another grievance on March 4, 2019. Even after the grievance, he didn't receive an examination or treatment for his hip and shoulder pain.

Mr. Hogan seeks a declaration that his rights were violated, an order enforcing "all contracts in full force and effect," compensatory and punitive damages, and injunctive relief in the form of a special mattress and diet. (*Id.* at 38-39.)

Mr. Hogan's complaint makes multiple references to the Uniform Commercial Code, Security Agreements, his status as a "superior lien holder," the reservation of his rights, and other concepts commonly espoused by sovereign citizens. Mr. Hogan bases his complaint on sovereign citizen theory,

which courts have repeatedly characterized as a legally frivolous theory with no conceivable validity. *See* United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) (collecting cases). Each of Mr. Hogan's allegations grounded in sovereign citizen theory is summarily dismissed because such allegations are frivolous and fail to state a claim.

Setting aside the references to the Uniform Commercial Code filings and the alleged contracts resulting from the defendants' failure to respond to his various filings, Mr. Hogan alleges that he has sought medical care for his stomach, shoulder, and hip pain, but has received inadequate care for these conditions. In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical need. Estelle v. Gamble, 429 U.S. 97 (1976). A medical need is "serious" if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

While Mr. Hogan has sued numerous individuals, he doesn't allege that any of those individuals were personally involved in making decisions about his

medical care. Several of the people that Mr. Hogan has sued are administrators: Commissioner Bruce Lemmon, Acting Commissioner Robert E. Carter, Jr., Warden Ronald Neal, Healthcare Administrator Sherri Fritter, and Assistant Warden Payne. Administrators aren't liable just because they are in charge of the prison or supervise other individuals who violate a plaintiff's rights. "§ 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." Palmer v. Marion Cty., 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009); *see also* Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993) (noting the doctrine of *respondeat superior* has no application to § 1983 actions). Furthermore, non-medical staff rely on medical experts and are "entitled to relegate to the prison's medical staff the provision of good medical care." Burks v. Raemisch, 555 F.3d at 595. These non-medical administrators were entitled to rely on the judgment of the medical staff at the prison to decide what specific treatment was appropriate for Mr. Hogan. Mr. Hogan can't proceed on his claim for monetary damages against Commissioner Bruce Lemmon, Acting Commissioner Robert E. Carter, Jr., Warden Ronald Neal, Healthcare Administrator Sherri Fritter, and Assistant Warden Payne for failure to provide constitutionally adequate medical care.

Dr. Thompson and Dr. Martha Kis might have been directly involved in providing inadequate medical care to Mr. Hogan, but Mr. Hogan doesn't describe any encounters with either of them, and he hasn't explained how they are

responsible for him being denied constitutionally adequate care for his stomach, hip, and shoulder pain. "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011). Even incompetence doesn't state a claim for deliberate indifference. Minix v. Canarecci, 597 F.3d 824, 831-32 (7th Cir. 2010). Because Mr. Hogan doesn't include any facts from which it can be inferred that either Dr. Thompson or Dr. Martha Kis were deliberately indifferent to a serious medical need, he can't proceed against them.

Mr. Hogan has sued Grievance Specialist J. Wallen, but he doesn't allege that Mr. Wallen denied him constitutionally adequate medical care. He alleges only that Mr. Wallen didn't resolve his grievances to his satisfaction. But, Mr. Hogan has no constitutional right to access the grievance process. *See* Grieveson v. Anderson, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure). Accordingly, Mr. Hogan will not be permitted leave to proceed against Grievance Specialist J. Wallen (or any other defendant) based

9

on allegations that the manner in which his grievances were handled violated his Due Process rights.

Mr. Hogan has also listed several unknown "John Doe" defendants. It is unclear why he is suing them. This type of unnamed defendant must be dismissed because "it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." Wudtke v. Davel, 128 F.3d 1057, 1060 (7th Cir. 1997) (citations omitted).

Many of Mr. Hogan's allegations are time barred. "Indiana's two-year statute of limitations . . . is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983." Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 894 (7th Cir. 2001). Mr. Hogan's complaint was mailed on March 27, 2019, so the applicable statute of limitations bars claims arising before March 27, 2017.

While Mr. Hogan can't proceed against any of the defendants for monetary damages, he has alleged that he continues to suffer from ongoing stomach, hip, and shoulder pain. Mr. Hogan's complaint does not state a claim against Warden Neal in his individual capacity for monetary damages, but Warden Neal is ultimately responsible for ensuring that Mr. Hogan receives medical care that complies with the Eighth Amendment, and Mr. Hogan can proceed against Warden Neal in his official capacity to the extent he seeks injunctive relief in the form of constitutionally adequate medical treatment for his stomach, hips, and shoulder pain, including (if appropriate) a specialized mattress and diet.

For these reasons, the court:

(1) GRANTS Christopher Dewayne Hogan leave to proceed against Warden Ronald Neal in his official capacity for injunctive relief to provide him with constitutionally adequate medical care for his stomach, hip, and shoulder pain, as required by the Eighth Amendment;

(2) DISMISSES Commissioner Bruce Lemmon, Acting Commissioner Robert E. Carter, Jr., Healthcare Administrator Sherri Fritter, Dr. Thompson, Dr. Martha Kis, Grievance Specialist J. Wallen, Assistant Warden Payne, and the unknown "John Doe" defendants;

(3) DISMISSES all other claims;

(4) CAUTIONS Mr. Hogan that, if he continues to present frivolous arguments grounded in sovereign citizenship theory, they will be summarily dismissed, and he could face sanctions;

(5) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Warden Ronald Neal at the Indiana Department of Correction with a copy of this order and the complaint, pursuant to 28 U.S.C. § 1915(d); and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Warden Ronald Neal respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 24, 2019

s/ Robert L. Miller, Jr.
JUDGE