UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER DEWAYNE HOGAN, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-288-RLM-MGG |
| RONALD NEAL, | |
| Defendant. | |

OPINION AND ORDER

Christopher DeWayne Hogan, a prisoner without a lawyer, is proceeding in this case against "Warden Ronald Neal in his official capacity for injunctive relief to provide him with constitutionally adequate medical care for his stomach, hip, and shoulder pain, as required by the Eighth Amendment." ECF 13 at 11. Warden Neal moved for summary judgment, arguing that Mr. Hogan didn't exhaust his administrative remedies before filing suit. Mr. Hogan filed a response, and Warden Neal filed a reply.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that

party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion can't just rely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." Trade Fin. Partners, LLC v. AAR Corp., 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).

Prisoners can't bring an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015).

The court of appeals has taken a "strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002). A prisoner can be excused from exhausting if the grievance process was effectively unavailable. Woodford v. Ngo, 548 U.S. 81, 102 (2006). "[E]xhaustion is

not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." Hill v. Snyder, 817 F.3d 1037, 1041 (7th Cir. 2016).

Warden Neal argues that Mr. Hogan didn't exhaust his administrative remedies because he didn't appeal the denial of any of his grievances "to the final level." ECF 36 at 4. Joshua Wallen, the Grievance Specialist at Mr. Hogan's prison, attests that Mr. Hogan filed four formal grievances but "did not advance any of his grievances" to the "final stage." ECF 37-1 at 1-2. Warden Neal provides a copy of Mr. Hogan's grievance history, which shows that the prison received four grievances from Mr. Hogan between September 2016 and April 2020,[1] and that Mr. Hogan didn't appeal any of his grievances beyond the formal grievance stage. *Id.* at 18. Mr. Hogan responds that the grievance remedies were unavailable to him due to the prison's "obstruction of justice." ECF 45-1 at 1.

First, Mr. Hogan argues that the grievance history provided by the prison is "inaccurate and incomplete" because many of his grievances were ignored or "have been unrecorded or lost." ECF 45-1 at 1-3, 6-8. Mr. Hogan provides specific allegations about only one grievance. He argues that, "[o]n January 3, 2017, Plaintiff was taken to a Restrictive Housing unit and denied adequate medical treatment for his stomach, shoulders, and hips." *Id.* at 6. He asserts that he filed a formal complaint about this incident "[o]n or about January 8, 2017 . . . which was improperly screened, and

---

[1] The grievance history shows that the prison received the following grievances from Mr. Hogan: (1) Grievance 93493 on September 29, 2016; (2) Grievance 93730 on October 21, 2016; (3) Grievance 94826 on January 30, 2017; and (4) Grievance 112763 on April 20, 2020. ECF 37-1 at 18. Whether any of these grievances are relevant to the claims in Mr. Hogan's complaint isn't clear.

unaddressed on the merit of the claims." *Id.* at 6. Mr. Hogan asserts that he "requested a grievance appeal from the former Executive Assistant, Vickie Long, which was withheld for weeks," and that he did not receive the form until "on or about January 23, 2017." *Id.* at 6-7. Mr. Hogan attests that he filed the appeal form once he received it, but that "Ms. Long again improperly screened the aforementioned grievance appeal, stating that the plaintiff submitted the form too late and did not show good cause for the delay." *Id.* at 7. Mr. Hogan doesn't attach or cite to the January 8, 2017 grievance.

Warden Neal doesn't directly respond to Mr. Hogan's affirmations that he filed a grievance on January 8, 2017 and was prevented from timely appealing the denial of that grievance, but the grievance history disputes these affirmations. Thus, there are genuine issues of fact regarding whether Mr. Hogan filed a grievance on January 8, 2017, and whether he was improperly prevented from timely appealing that grievance. Though Mr. Hogan attests that he filed other grievances that were ignored or unrecorded, he has not alleged any facts showing that they were relevant to the claims raised in this case.[2] *See* Trade Fin. Partners v. AAR, 573 F.3d at 407.

Second, Mr. Hogan argues that the grievance remedies were unavailable to him because the prison didn't communicate or make the grievance policies readily available to the prison population. Mr. Hogan explains that he hasn't gotten any information about the grievance policies since 2011, and that it has been "practically

---

[2] Mr. Hogan also attests that he filed an "informal" grievance "[o]n or about Oct. 17, 2016," which challenged the prison's "failure to give any attention/examinations to his shoulders and hips." ECF 45-1 at 6. Mr. Hogan doesn't allege that he ever tried to appeal this grievance or was prevented from doing so.

4

impossible" to stay apprised of the changing policies. *Id.* at 4-5. Warden Neal doesn't respond to these attestations in his reply brief. To the extent that this creates a dispute, it isn't relevant because Mr. Hogan showed that he knew that he needed to file a grievance, and the grievance response form informed Mr. Hogan that he needed to file a grievance appeal. Because the record shows that Mr. Hogan was informed of all relevant aspects of the grievance policies at issue in this case, there is no genuine issue regarding whether the prison properly communicated the policies to Mr. Hogan.

In addition to the four grievances listed in Mr. Hogan's grievance history,[3] Warden Neal also argues that Mr. Hogan didn't properly exhaust an improperly filed March 2019 grievance, in which Mr. Hogan alleged that the Assistant Warden hadn't responded to his complaint that his "outdated and paper thin mattress" was causing "serious injuries to [his] shoulders and hips." ECF 36 at 2; ECF 37-1 at 30. Warden Neal presents evidence that this grievance was returned to Mr. Hogan with instructions to follow the proper chain of command and speak to his unit lieutenant first, and that Mr. Hogan never refiled the grievance. Mr. Hogan responds that there is a genuine issue regarding "whether [he] circumvented the unit lieutenant [by] speaking direct to the Assistant Warden" about his mattress and "whether going to the unit lieutenant is customary procedure." ECF 45 at 2. Although Mr. Hogan argues that this grievance was improperly rejected, he doesn't cite any evidence or facts to support his assertion that he followed proper procedure by complaining directly to

---

[3] Mr. Hogan discusses grievances that he purportedly filed on October 17, 2016, and January 8, 2017, but his affidavit doesn't directly refer or cite to any of the four grievances listed in his grievance history.

the Assistant Warden as opposed to his unit lieutenant. See Trade Fin. Partners v. AAR, 573 F.3d at 407. Mr. Hogan doesn't dispute that he did not refile this grievance after it was rejected. The Court accepts as undisputed that Mr. Hogan didn't properly file his March 2019 grievance.

Warden Neal hasn't carried his burden of proving that Mr. Hogan didn't exhaust his administrative remedies: genuine issues exist regarding whether the remedies were available to Mr. Hogan. See King v. McCarty, 781 F.3d at 893; Woodford v. Ngo, 548 U.S. at 102. Genuine issues exist as to whether: (1) Mr. Hogan filed a grievance on January 8, 2017, that is relevant to the claims in his complaint; and (2) the prison improperly prevented Mr. Hogan from timely appealing the denial of his January 8, 2017 grievance. Resolving these issues will require a hearing as explained in Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008). Warden Neal's reply brief requests a Pavey hearing if the Court finds that a genuine issue of material fact exists. ECF 47 at 2 n.1.

The court DENIES the summary judgment motion (ECF 35) and REFERS this case to Magistrate Judge Michael G. Gotsch, Sr., to conduct an evidentiary hearing and to prepare a report and recommendation.

SO ORDERED.

Dated: March 25, 2021

      /s/ Robert L. Miller, Jr.
Judge
United States District Judge