UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER DEWAYNE HOGAN, Plaintiff, v. RONALD NEAL, Defendant. | CAUSE NO. 3:19-CV-288-RLM-MGG |

REPORT AND RECOMMENDATION

Christopher DeWayne Hogan, a prisoner without a lawyer, proceeds on an injunctive relief claim against the Warden Ron Neal in his official capacity to receive the medical treatment for his stomach, hip, and shoulder pain as required by the Eighth Amendment. ECF 13. On May 13, 2020, the Warden moved for summary judgment, asserting the affirmative defense of failure to exhaust administrative remedies. ECF 35. On May 25, 2021, the court denied the motion, finding a genuine dispute of material fact on the issue of whether: (1) Hogan filed a grievance on January 8, 2017, that is relevant to the claims in his complaint; and (2) the prison improperly prevented Hogan from timely appearing the denial of his January 8, 2017, grievance. ECF 48. This case was referred to the undersigned magistrate judge for an evidentiary hearing to resolve this factual dispute pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), and the hearing was held on June 1, 2022. ECF 84.

At the evidentiary hearing, the Warden submitted the grievance policy for inmates housed in correctional facilities maintained by the Indiana Department of

Corrections that was effective during early 2017. ECF 85-5. According to the policy, inmates must attempt to informally resolve the incident with the appropriate staff member within five days of the incident. *Id.* at 14. If the inmate is dissatisfied with the response to the informal attempt, he must submit a formal grievance to the grievance manager within five days of receiving the grievance form and within twenty days of the incident. *Id.* at 16. If the inmate is dissatisfied with the response to the formal grievance, he may appeal to the Department Offender Grievance Manager. *Id.* at 20. According to the Grievance Response form, inmates must submit their appeal to the facility executive assistant within five working days from the receipt of the response. ECF 65 at 72.

Also according to the grievance policy, an inmate may seek an extension of time by submitting the reason for the delay on a separate piece of paper along with the appropriate grievance or grievance appeal form or a request for the appropriate form. ECF 85-5 at 13. Inmates seeking such an extension must show good cause. *Id.* An example of good cause under the grievance policy is an inability to comply for reasons outside of the inmate's control. *Id.* at 19.

The following grievances records were presented at the evidentiary hearing:

**Informal Grievance from Hogan, dated January 8, 2017**

On 1-3-2017 Corizon Healthcare provides committed fraud by asserting on State Form 9262 that I was in stable condition without any substantial assessment. They further committed fraud by asserting that I was advised, recommended, and understood the nature of treatment offered and provided, which was an outright lie. They also lied about never being informed of my shoulder injuries. I have record of said notice.

**Informal Grievance Response from Sherry Fritter, dated January 20, 2017**

Mr. Hogan, on 1-3-2017, you refused all vitals and seg screen and refused to sign refusal form. Sergeant Jackson with a nurse as a witness signed off on your refusal slip. On 1-9-2017, you refused medical treatment.

**Formal Grievance from Hogan, dated January 23, 2017**

On 1-20-2017, staff member (name unrecognizable) stated the obvious when he/she said I refused vitals and screening as this whole process was perfunctory, despotic, pretentious, and only had [the] objective [of] justifying my being sent to segregation. This is evinced by the fraudulent report state form signed off on by Nurse and Sergeant Jackson who had no standing to verify anything. This form was an attempt by Corizon staff to transfer liability onto me when the truth of the matter was that no advice, information, substantial assessment, or treatment was offered of provided, and Corizon staff committed fraud and outright lied on State form 9262 and on an informal complaint, making a defamatory statement that was injurious to my reputation and abridging my comforts without ever really discerning my condition. This was menacing and threatens my holistic health.

Under the Freedom of Information Act, I request the standard or method of assessment for these screenings.

I request State Form 9262 be removed from my health record.

I request substantial treatment for shoulder, hip, and stomach problems as I've already filled out healthcare requests for this.

I request removal from segregation as this is not promoting good health in any way. In fact, it's having a negative effect on my health.

**Formal Grievance Response, dated February 16, 2017**

Mr. Fritter advises on January 3, 2017, you refused to answer segregation screening questions, vitals and nursing assessments. You also refused to sign the refusal form. Sergeant Jackson and a Corizon nurse signed off as witnesses. Then on January 9, 2017, you refused to see the provider and stated "unless I can be treated holistically and be put on a no-soy or renal diet, I refuse all medication, lab work, and other testing."

Mr. Hogan, you chose to refuse medical treatment on January 3 and 9, 2017. In order to receive substantial treatment, you need to comply with health care providers. The Grievance Process is not the correct officer to

assist you with a transfer. I suggest that you contact Unit Team with your request for being reassigned to another housing location. Grievance addressed.

**Grievance Appeal from Hogan, undated**

Date Grievance Response Received: February 16, 2017.

Ms. Long never addressed the crux of the issues on the merit which was fully addressed in [an attached document.] Corizon Healthcare nurse made false statements on State form 9262 without ever assessing me. Moreover, Corizon Staff had been and still are being deliberately indifferent as they've continued with a course of so-called "treatment in the face of resultant pain and risk of permanent injury to my shoulders, hips, stomach, and mental state." Furthermore, as stated in [the attached document], no Corizon staff, doctor, nurse, or anybody else has ever offered, advised, advised against, informed me of any treatments or side effects, or recommended any treatments. So I don't understand the nature or scope of any supposed treatments available by Corizon. And the despotic, cursory, and inadequate treatment made available thus far amounts to no treatment at all and violated the 14th and 8th Amendment to the Constitution. In addition, on January 9, 2017, I did not refuse to see the provided. I simply noticed her that I needed attention for my shoulders, hips, and stomach. I also notified her that soy and gluten have been damaging to my stomach to which she responded that I would have to be on my death bed to receive a more healthy diet. They don't even recommend soy and gluten for dogs anymore

**Return of Grievance Appeal from Vickie Long, dated March 1, 2017[1]**

Date Grievance Appeal Received: 03/01/2017

You have submitted the form too late and have not shown any good reason for the delay. Grievance appeal forms must be submitted within the time limits set out in A.P. 00-02-301.

---

[1] At the evidentiary hearing, the Warden objected to the admission of this exhibit on that basis that Hogan failed to disclose it. The undersigned admitted the exhibit over this objection, reasoning that the exhibit was otherwise admissible and that it was relevant to show that Hogan knew of his right to appeal and that correctional staff responded to the grievance appeal. Nevertheless, the undersigned recognizes that this ruling may have degraded the Warden's argument presented in the opening statement and based on Hogan's deposition testimony that Hogan improperly sent the grievance appeal directly to the central office for the Indiana Department of Correction.

4

ECF 65-1 at 72, 76; ECF 85-6; ECF 90.

> At the summary judgment stage, on August 31, 2020, Hogan attested as follows:
>
> 29. On or about January 8, 2017, Plaintiff filed a formal complaint of the misrepresentation of the incident on January 3, 2017, which was improperly screened and did not address the merits of the claims.
>
> 30. Shortly thereafter, Plaintiff requested a grievance appeal from the former executive assistance, Vickie Long, which was withheld for weeks.
>
> 31. Once Plaintiff received the requested grievance appeal form on or about Jan. 23, 2017, he complained about Ms. Long's failure to address the merits of the issues in his informal and formal complaints in addition to the issues raised in [another] document.
>
> 32. Mr. Long again improperly screened the aforementioned grievance appeal, stating that the plaintiff submitted the form too late and did not show good cause for the delay.
>
> 33. This response made the appeal process unavailable to the plaintiff without giving any consideration to the fact that the only reason it was submitted when it was was because the grievance appeal was withheld for weeks.

ECF 45-1 at 6-7.

> At a deposition, Hogan testified:
>
> **Defense Counsel:** So let's take a look at this document that you've provided. And this is a grievance that you filed on January 30, 2017?
>
> **Hogan:** Yeah.
>
> **Defense Counsel:** Or I'm sorry. It was returned to you on January 30, 2017. Is that accurate?
>
> **Hogan:** Yeah. I believe it is.
>
> **Defense Counsel:** So how was this grievance resolved?
>
> **Hogan:** It was never resolved. They basically said that I didn't have any relief coming. I didn't get any treatment for my shoulders or my hips. I

didn't receive any treatment for my stomach. I asked for some type of diet that would, you know, be free of a lot of the processed foods that they serve here. And I was again denied. And they were basically telling me that in order to receive the treatment that I needed, I would basically have to be on my death bed to receive that treatment. And so I moved forward with the process after that.

**Defense Counsel:** When you say moved forward with the process, did you file an appeal of the grievance denial?

**Hogan:** Yes, I did. At the time when this took place, I was in D cell house at the time, which is a lock-up unit. I never received a response to that grievance at all.

**Defense Counsel:** You never received a response to the grievance document that we're looking at right now?

**Hogan:** To the appeal from that.

**Defense Counsel:** To the appeal?

**Hogan:** Yes.

**Defense Counsel:** What steps did you take to file the appeal?

**Hogan:** I wrote, if I'm not mistaken, Vickie Long, which at the time was the executive assistant, I think . . . So I ultimately asked Mrs. Vickie Long what was the next step. She gave me a grievance appeal form, which I filled out, and I sent it down state to the final reviewing authority. And I didn't receive any response after that.

**Defense Counsel:** And how did you send it down state?

**Hogan:** Through the mail.

**Defense Counsel:** When you say you sent it down state, does that mean you mailed it directly to IDOC central office in Indianapolis?

**Hogan:** Yes.

**Defense Counsel:** Did you did do anything in between then?

**Hogan:** If I did, I don't recall right now.

6

>**Defense Counsel:** So the grievance that we have here as Exhibit 1, that got denied?
>
>**Hogan:** Right.
>
>**Defense Counsel:** And then your next step was to send an appeal directly to Indianapolis, correct?
>
>**Hogan:** Right.
>
>**Defense Counsel:** And there were no steps in between that you got documentation for?
>
>**Hogan:** Right, right, right. If I'm not mistaken, yes.

ECF 85-7 at 10-13.

At the evidentiary hearing, Hogan testified that he could not recall specific dates as to when he sent or received grievance documents. He testified that he typically mailed documents within a day of the date on his submissions and that he typically received documents from staff about a week after they were dated. He explained that he could not recall specific dates due to the passage of time and his numerous efforts to obtain relief through the grievance process. He initially testified that he did not receive any response to his grievance appeal form but later produced a response from Vickie Long. He prepared the grievance appeal form but could not recall whether he wrote the date on the grievance appeal form. He testified that he "had an idea' that his grievance appeal was late at the time he submitted it but did not provide an explanation for the untimeliness. He acknowledged that he did not request an extension of time to file a grievance appeal. He also admitted that he could have reviewed the grievance policy at the law library but that his time to review the policy was limited and he was not

7

allowed to make copies. He preferred to use his time at the law library to work on the merits of his cases. He never asked to see the grievance policy prior to 2017.

Anthony Hogan – Christopher Hogan's father – also testified at the hearing. During the time relevant to these grievance efforts, Anthony Hogan resided in a cell next to his son and assisted him with the grievance process. He had no specific recollection of dates but recalled that delays in receiving grievance documents frustrated his son's efforts to complete the grievance process.

Joshua Wallen, grievance specialist at the Indiana State Prison, also testified at the hearing. He testified that the grievance policy was available to inmates at the law library. It is the inmate's obligation to request an extension of time and that the late delivery of a grievance response would constitute good cause to extend the deadline to appeal the grievance response. Inmates ordinarily receive mail from the grievance office within two business days.

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules

8

require."[2] *Id.* at 1025. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Inmates are only required to exhaust administrative remedies that are available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered available. *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

Courts have recognized three ways in which a grievance process may become unavailable. *Ross v. Blake*, 136 S. Ct. 1850 (2016). "First, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it

---

[2] At the hearing, Hogan's testimony regarding dates was very imprecise. In his argument to the Court at the hearing, Hogan stated that the exact times and dates are not the real issue before the Court because a few days here or there were not significant. Of course, as noted by *Pozo*, 286 F.3d at 1025, times and dates are significant in determining whether a prisoner has exhausted his administrative remedies.

9

operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

To start, the parties do not dispute that Hogan had access to the grievance policy at the law library or that the grievance policy allowed inmates to ask for extensions of time. While access to the law library may have been limited at times, Hogan concedes that he could have reviewed the grievance policy at the law library but declined to do so. Further, while Hogan has been inconsistent regarding the specific details of his efforts to submit a grievance appeal, his earliest statement on record is from his affidavit in support of the motion for summary judgment in August 2020. There, Hogan maintained that he submitted his grievance appeal late because Vickie Long did not promptly provide him with a grievance appeal form. The late response from Vickie Long did not render the grievance process unavailable because Hogan could have requested and been granted an extension of time. Yet, Hogan did not request an extension of time. Therefore, the undersigned finds that the grievance process was available to Hogan in early 2017 but that he did not complete the grievance process with respect to the January 2017 grievance.

10

The Warden further argues that grievance did not relate to the medical issues that are the subject of Hogan's claim. The Warden maintains that instead the focus of the grievance were allegations that medical staff had committed fraud. The purpose of the grievance process is to alert officials to a problem so that action can be taken to remedy the problem. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Proper exhaustion of administrative remedies means that "the grievances must contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650. "[T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.*

Because the grievance procedure has no applicable requirements, the relevant question is whether Hogan's grievance was sufficient to alert the grievance officer to the nature of his claim against the Warden for medical care. To the Warden's point, Hogan's grievance could have been reasonably construed as a complaint about his medical treatment or a complaint that medical staff placed false statements in his medical records. However, the grievance officer's response reflects her understanding that the grievance concerned medical issues. Specifically, she responded, "In order to receive substantial treatment, you need to comply with health care providers." ECF 85-6 at 1. Given this response, the undersigned finds that the grievance was sufficient to alert the grievance officer to the nature of his claim against the Warden for medical care.

For these reasons, the undersigned:

(1) FINDS that the Indiana State Prison maintained a grievance system that allowed Christopher Hogan to submit a grievance appeal regarding inadequate medical care in early 2017;

(2) FINDS that Christopher Hogan did not submit a timely grievance appeal or request an extension of time regarding inadequate medical care in early 2017;

(3) FINDS that staff at the Indiana State Prison did not render the grievance process unavailable to Christopher Hogan in early 2017,

(4) FINDS that the January 2017 grievance was sufficient to alert the grievance officer to the nature of his medical claim against the Warden; and

(5) RECOMMENDS that this case be dismissed without prejudice because Christopher Hogan did not exhaust administrative remedies before filing this lawsuit as required by 42 U.S.C. § 1997e(a).

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

SO ORDERED on July 12, 2022.

s/ Michael G. Gotsch<br>
Michael G. Gotsch, Sr.<br>
United States Magistrate Jude